UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cement Masons, Plasterers and Shophands Service Corporation, | Case No. 22-cv-0712-ECT-BRT |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS QUALITY COATINGS, LLC, QUALITY CLEANING, INC., AND ALISA MACIEJ'S MOTION TO DISMISS** |
| v. | |
| Quality Coatings, LLC, Quality Cleaning, Inc., QC Companies, and Alisa Maciej, Individually, | |
| Defendants. | |

## INTRODUCTION

Defendants Quality Coatings, LLC ("Coatings"), Quality Cleaning, Inc. ("Cleaning") and Alisa Maciej ("Maciej") (collectively, "Defendants") move to dismiss the Complaint of Plaintiff Cement Masons, Plasters and Shophands Service Corporation ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Plaintiff has failed to allege facts sufficient to state a claim for relief based upon its alter ego theory of liability, because it does not (and cannot) assert facts that demonstrate that Coatings was formed with the intent to avoid obligations under a collective bargaining agreement. Further, because Plaintiff's remaining claims for relief depend on its success under its alter ego theory, those claims fail as well. Accordingly, Defendants respectfully request the Court grant their Motion and dismiss Plaintiff's claims in their entirety.

## FACTUAL BACKGROUND

Cleaning was formed on February 13, 1990, when its Articles of Incorporation were filed with the Minnesota Secretary of State, and it remains an active corporation in good standing with the Secretary of State today. (Declaration of Michael G. McNally ("McNally Decl.") Ex. 1, ¶ 6.) Cleaning is not currently, nor has it ever been, party to any collective bargaining agreement with the Cement Masons, Plasterers and Shophands Local No. 633 ("Union"). (Compl. ¶¶ 10–13.)

Coatings was formed on June 17, 2013, when its Articles of Organization were filed with the Minnesota Secretary of State, and it also remains an active corporation in good standing with the Secretary of State today. (McNally Decl. Ex. 2, ¶ 7.) On June 30, 2014, less than a year after it was formed, Coatings first became bound to the terms of a collective bargaining agreement with the Union, and remains bound to a collective bargaining agreement with the Union today. (Compl. ¶ 10.)

Defendant QC Companies is an assumed name, and its Certificate of Assumed Name was filed with the Minnesota Secretary of State on May 19, 2004. (McNally Decl. Ex. 3.) QC Companies is not a separately formed entity with the Minnesota Secretary of State. (*Id.*; Compl. ¶ 6.)

On March 18, 2022, Plaintiff filed its complaint in the United States District Court for the District of Minnesota. Plaintiff asserts four counts against Defendants and QC Companies: (1) Alter-Ego Liability for QC Companies; (2) Right to Audit; (3) Individual Liability; and (4) Damages. (Compl. ¶¶ 31–47.)

## **LEGAL STANDARD**

A Rule 12(b)(6) motion tests whether the complaint states a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). On a Rule 12(b)(6) motion to dismiss, the Court may consider exhibits attached to the complaint, documents that are necessarily embraced by the pleadings, and public records. *See Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008). These "include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

"In deferring to the well-pleaded factual allegations, the Court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences" or "blindly accept the legal conclusions drawn by the pleader from the facts." *Helleloid v. Indep. Sch. Dist.*, 149 F. Supp. 2d 863, 867 (D. Minn. 2001) (quoting *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)). If a plaintiff has not pled facts entitling him to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citations omitted).

## ARGUMENT

**I.   DEFENDANT QC COMPANIES IS NOT A LEGAL ENTITY SUBJECT TO SUIT AND ACCORDINGLY SHOULD BE DISMISSED.**

A defendant's capacity to be sued is determined based on "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). "A court should dismiss a party that is not a legal entity." *D.W. v. Radisson Plaza Hotel Rochester*, 958 F. Supp. 1368, 1382 (D. Minn. 1997) (citing *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1212 (5th Cir. 1980)). An assumed name "is not itself a legal entity." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1104 (D. Minn. 2010).

QC Companies is an assumed name, not a separately formed entity. (McNally Decl. Ex. 3; Compl. ¶ 6.) Because an assumed name is not a legal entity subject to suit, it should be dismissed from the Complaint. *See Radisson Plaza*, 958 F. Supp. at 1382 (dismissing assumed name defendant because an assumed name is not a legal entity subject to suit).

**II.   PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

   **A.   Plaintiff has failed to sufficiently plead facts to support its alter ego theory of liability.**

The alter ego doctrine developed under the National Labor Relations Act focuses "on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement." *Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997) (citation omitted). "The essential inquiry under the alter ego analysis is '[w]hether there was a *bona fide* discontinuance and a true change in ownership … or merely a disguised

4

continuance of the old employer.'" *Iowa Express Distribution, Inc. v. NLRB*, 739 F.2d 1305, 1310 (8th Cir. 1984) (quoting *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106 (1942)).

In cases arising under § 502, 29 U.S.C. § 1132, and § 515, 29 U.S.C. § 1145, of the Employee Retirement Income Security Act of 1974 ("ERISA"), the United States Court of Appeals for the Eighth Circuit applies the alter ego doctrine under a strict corporate law standard. *Superior Gen. Contractors, Inc.*, 104 F.3d at 1055 ("[W]e believe the corporate law standard for determining alter ego status strikes an appropriate balance between the congressional intent of ERISA and the long-established principle that a corporation's existence is presumed to be separate and may be disregarded only under narrowly prescribed circumstances.").

A defendant corporation is an alter ego if it "(1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." *Id*. The fact that one company may control another is not alone grounds to find an alter ego relationship. "It is only when the control of the puppet company by the puppet master is 'used as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate a fraud' that liability can arise." *Reed v. Greenworks, Inc.*, No. 12-72 (JJK), 2015 WL 364602, at *10 (D. Minn. Jan. 27, 2015) (citations omitted); *see also Trustees of Sheet Metal v. Central Air Heating Air*, No. 4:10CV293MLM, 2011 WL 1899202, at *3 (E.D. Mo. May 19, 2011) ("To show that a corporation used control to commit a fraud or wrong, the court looks to whether the new corporation was created to avoid a legal duty or obligation.").

Typically, in an alter ego claim, "the Court considers whether the employers acted out of anti-union sentiment." *Twin City Pipe Trades Serv. Ass'n, Inc. v. S&S Thermo Dynamics, Inc.*, No. 12-1417 (PAM/JJG), 2013 WL 3989945, at *5 (D. Minn. Aug. 2, 2013) (quotation omitted); *see also Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 520 (8th Cir. 2020) ("In the context of a collective bargaining agreement, a 'critical part' of the inquiry is whether an employer displays anti-union sentiment by using the alter ego to avoid its obligations.").

To prevail on its alter ego claim, Plaintiff must show that Cleaning formed Coatings with the intent to evade obligations under a collective bargaining agreement.

Cleaning was formed in 1990, has been performing work in and related to the construction industry since then, remains an active corporation in good standing with the Minnesota Secretary of State, and has never been bound to a collective bargaining agreement with the Union. Coatings was formed more than twenty-three (23) years after Cleaning's formation. Coatings could not possibly have been formed in order for Cleaning to try to avoid the terms of a collective bargaining agreement because Cleaning was never bound to a collective bargaining agreement in the first place. Clearly, the formation of Coatings was not a result of anti-union animus. Cleaning had no relationship with the Union from which animus could arise.

The alter ego doctrine is intended to provide an analytical hook to bind a non-union employer to a collective bargaining agreement where the non-union employer was formed with the intent to avoid obligations under that agreement. *See Southport Petroleum*, 315 U.S. at 106. Here, Plaintiff's complaint fails to allege that the formation of Coatings was

done with the intent to avoid obligations under a collective bargaining agreement. In fact, Coatings actually agreed to be bound to a collective bargaining agreement with the Union within a year of its formation.

### B. Other courts have specifically rejected the "reverse" alter ego doctrine advanced by Plaintiff.

Generally, an alter ego claim in the context of a collective bargaining relationship involves a union signatory employer opening a non-union company, either during the existence of the union company or after its cessation of operations, in order to avoid its collective bargaining obligations. Here, Plaintiff is alleging a "reverse" alter ego theory. Plaintiff alleges that the non-union employer (Cleaning) opened a new company (Coatings) which then entered into a collective bargaining agreement with the Union. The Plaintiff alleges that this creation of Coatings, and Coatings agreeing to become bound to a collective bargaining agreement with the Union, was done so that Cleaning could avoid obligations under a collective bargaining agreement that it was never signatory to, and to thereby perpetrate a fraud.

This theory is illogical. Pleading and proving the requisite intent to evade obligations of a collective bargaining agreement is essential to succeeding on an alter ego claim. Simply put, a non-union company cannot have the intent to evade a collective bargaining agreement that it never entered into by forming a union company that did enter into a collective bargaining agreement. The United States Court of Appeals for the Ninth Circuit has specifically rejected this "reverse" alter ego theory of liability. In *S. Cal. Painters & Allied Trades v. Rodin & Co.*

7

the Ninth Circuit considered whether a non-union company was the alter ego of a union company that was formed more than twenty (20) years after the non-union company. 558 F.3d 1028, 1030 (9th Cir. 2009). First, the Ninth Circuit analyzed the logical underpinnings of the alter ego doctrine and held that it could not apply in "reverse." *Id.* at 1033. ("[T]he alter ego doctrine prevents union employers from avoiding collective bargaining obligations, it does not apply in the 'reverse' where a non-union employer creates a union company because the non-union employer has no collective bargaining obligations to avoid."). The court further stated, "[t]he alter ego doctrine was never intended to coerce a non-union company into becoming a union company by requiring compliance with a collective bargaining agreement it never signed, with a union its employees never authorized to represent them." *Id.*

The court went on to reject the application of the "reverse" alter ego theory of liability:

> We know of no court that has recognized a reverse alter ego doctrine, and at least one court that has explicitly rejected it… We decline to recognize a "reverse" alter ego doctrine… [The non-union company] is not bound by the [collective bargaining agreement] or liable under the alter ego doctrine because a non-union company cannot be guilty of evading a collective bargaining agreement that it never entered into.

*Id.* at 1032–33 (internal citation omitted)*; see also Writers Guild of America, West, Inc. v. BTG Productions, LLC*, CV 14–05828 RSWL (AJWx), 2018 WL 3241766, at *5 (C.D. Cal.*,* July 3, 2018) ("This 'reverse alter ego' scenario is the scenario here – Myriad, the non-union entity, was created in 1998, twelve years prior to BTG, the union entity. In such a situation, the Ninth Circuit has declined to recognize a 'reverse alter ego doctrine.'").

8

Plaintiff's "reverse" alter ego theory fails both because it is not a legally cognizable theory of liability and because Plaintiff has failed to allege that there was intent to evade obligations under the collective bargaining agreement by forming a company that became bound to, and remains bound to, a collective bargaining agreement.

### C. Because Plaintiff fails to state a claim upon which relief can be granted in Count I, Plaintiff's other claims fail as well.

Count I of the Complaint alleges that "[Cleaning and Coatings] are alter egos of one another and should be treated as a single employer under ERISA Section 515." (Compl. ¶ 36.) Count II alleges that as a result, Cleaning and Coatings are obligated to produce records to the Plaintiff's auditor to conduct a payroll compliance audit. (Compl. ¶¶ 37–40.) Count III alleges that Maciej is individually liable for all amounts owed pursuant to the collective bargaining agreement. (Compl. ¶¶ 41–43.) Count IV alleges that all of the Defendants are liable to Plaintiff for any amounts determined due in connection with the audit. (Compl. ¶¶ 44–47.)

Plaintiff's claims for relief in Counts II, III and IV are dependent on its success in proving its alter ego theory under Count I, in that if Plaintiff can demonstrate that Cleaning and Coatings are alter egos, then Plaintiff alleges that Cleaning must produce relevant records (Count II), and is liable for any unpaid contributions (Count IV) together with Maciej (Count III). Because Plaintiff has failed to state a claim upon which relief may be granted under Count I, it cannot state a claim for relief on its remaining counts and those should be dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims with prejudice.

Dated: April 28, 2022                                FOX ROTHSCHILD LLP

*/s/ Michael G. McNally*
Michael G. McNally (#0389762)
Colleen McGarry (#0391857)
Two22 Building
222 South Ninth Street, Suite 2000
Minneapolis, MN 55402-3338
Tel:  612.607.7000
Fax:  612.607.7100
mmcnally@foxrothschild.com
cmcgarry@foxrothschild.com

**ATTORNEYS FOR DEFENDANTS QUALITY COATINGS, LLC, QUALITY CLEANING, INC., AND ALISA MACIEJ**