UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Cement Masons, Plasterers and Shophands Service Corporation, | File No. 22-cv-712 (ECT/BRT) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Quality Coatings, LLC; Quality Cleaning, Inc.; QC Companies; and Alisa Maciej, *Individually*, | |
| Defendants. | |

---

Amanda R. Cefalu and Pamela Hodges Nissen, Reinhart Boerner Van Deuren s.c., Minneapolis, MN, for Plaintiff Cement Masons, Plasterers and Shophands Service Corporation.

Michael G. McNally and Colleen Cosgrove McGarry, Fox Rothschild LLP, Minneapolis, MN, for Defendants Quality Coatings, LLC, Quality Cleaning, Inc., and Alisa Maciej.

---

In this ERISA case, Plaintiff Cement Masons, Plasterers and Shophands Service Corporation, the receiving and collection agency for labor-union fringe-benefit funds, seeks to enforce its audit rights under collective-bargaining agreements (or "CBAs") against one signatory and two non-signatories. Defendant Quality Coatings, LLC, is bound by the CBAs. Plaintiff's theory is that the non-signatories—Defendants QC Companies and Quality Cleaning, Inc.—are alter egos of Quality Coatings and that Quality Coatings has used the non-signatory entities to avoid its obligations under the CBAs. Plaintiff also seeks a judgment against Defendants for any amounts determined to be due through the exercise of its audit rights and to impose personal liability on Defendant Alisa Maciej.

Defendants seek dismissal of Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). In a nutshell, Defendants characterize Plaintiff's claim as a "reverse-alter-ego theory" and point out that some federal courts have rejected this theory. Defendants argue that the non-viability of Plaintiff's reverse-alter-ego theory means that all of Plaintiff's claims fail. Seemingly in the alternative, Defendants argue that QC Companies is not subject to suit because it is merely an assumed name.

Defendants' motion will be denied. Plaintiff alleges facts plausibly meeting the Eighth Circuit's ERISA alter-ego test. The cases Defendants cite rejecting a "reverse alter-ego" theory do not justify dismissal. The Eighth Circuit has not followed them in the context of an ERISA claim, and even these cases seem to leave room for Plaintiff's theory. Defendant QC Companies will not be dismissed because it has not appeared and because, regardless, it would be a proper Defendant under the Federal Rules of Civil Procedure and ERISA.

I[1]

*The Plaintiff.* Plaintiff is the receiving and collection agent for all contributions to its member funds. Am. Compl. [ECF No. 20] ¶ 1. These member funds include the Minnesota Cement Masons Health and Welfare Fund, the Minnesota Cement Masons and Plasters Pension Fund, the Minnesota Cement Masons-Plasterers-Shophands Local 633 Savings Trust Fund, and the Minnesota Cement Masons-Plasterers-Shophands

---

[1] In accordance with the standards governing a Rule 12(b)(6) motion to dismiss, the facts are drawn entirely from the Complaint and documents embraced by it. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

Journeyman and Apprentice Training Fund (the "Funds"). *Id.* ¶¶ 1–3. The Funds are "multiemployer, jointly trusteed fringe benefit plans" administered in accordance with the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). *Id.* Plaintiff serves as a fiduciary with respect to the Funds. *Id.* ¶ 3; *see* 29 U.S.C. § 1002(21).

*The Defendants.* There are four Defendants: (1) Quality Coatings is a limited liability company organized under Minnesota law in 2013; it performs work in the construction industry and, as will be described, is a signatory to collective bargaining agreements. Am. Compl. ¶¶ 4, 14–16; ECF No. 28 Ex. 2. (2) Quality Cleaning is a Minnesota business corporation incorporated in 1990; it performs work in the construction industry but is "not signed to a collective bargaining agreement with the Cement Masons Contractors and the Cement Masons, Plasterers and Shophands Local No. 633." Am. Compl. ¶¶ 5, 11; ECF No. 28 Ex. 1. (3) Defendant Alisa Maciej is an owner of Quality Coatings. Am. Compl. ¶ 8.[2] Maciej "incorporated Defendant Quality Coatings in part for the purpose of obtaining work on Union projects." *Id.* ¶ 13. (4) Defendant QC Companies "is the name of an unincorporated organization" under which Quality Coatings, Quality Cleaning, and their owners "all operate." *Id.* ¶ 6.

*The CBAs.* Maciej executed three collective bargaining agreements on behalf of Quality Coatings with Local 633. Maciej executed the first CBA on June 30, 2014, and it

---

[2]   The Complaint, the Amended Complaint, and this case's docket identify *Alisa* Maciej as a Defendant. *See* Dkt.; ECF Nos. 1, 20. At various times, however, the Amended Complaint refers to *Alicia* Maciej. *E.g.,* Am. Compl. ¶¶ 11, 13.

3

was effective from May 1, 2013, through April 30, 2016. *Id*. ¶ 14. Maciej executed the second CBA on June 21, 2016, and it was effective from May 1, 2016, through April 30, 2019. *Id*. ¶ 15. Maciej executed the third CBA on July 15, 2019, and it was effective from May 1, 2019, through April 30, 2022. *Id*. ¶ 16. Maciej agreed to be personally bound under each of these CBAs. *Id*. ¶¶ 14–16. Generally speaking, employers bound to the CBAs must make fringe-benefit contributions to the Funds in accordance with the CBAs' terms on behalf of each defined bargaining unit employee. *Id*. ¶ 17. CBA-bound employers also are subject to reporting and auditing requirements. *Id*. ¶¶ 18–20.

*Plaintiff's Alter-Ego Theory.* Plaintiff's claims here are founded on a central theme that, beginning in 2013, "the Maciej family incorporated Quality Coatings and combined or commingled the operations of Quality Coatings and Quality Cleaning[] in order to avoid payment of fringe benefit contributions to the Funds." *Id*. ¶ 22. The Amended Complaint contains several allegations to support this theme. They include, for example: that Quality Coatings and Quality Cleaning solicit and obtain work through the QC Companies website and do not maintain separate websites, *id*. ¶¶ 24, 25; that the QC Companies website has not distinguished Quality Coatings' and Quality Cleaning's operations, *id*. ¶ 24; that QC Companies' website has displayed work-in-progress photographs showing CBA-covered work without distinguishing which organization is performing the work, *id*. ¶ 25; that "employees of the QC Companies operation, including members of Local 633, have received nearly identical checks regardless of which entity they are nominally working for during the course of a pay period[,]" *id*. ¶ 27; that some of these checks have been issued by QC Companies, *id*. ¶ 29; that "at least one Local 633 member[]" "received checks from

4

'Paychex, Inc.' and the bottom of the checks indicate they were issued from 'QC Companies Quality Cleaning, Inc.' or from 'Quality Coatings LLC" or just "QC Companies[,]" *id.* ¶ 30; that "an employee might receive checks from Quality Coatings, QC Companies, and/or from Quality Cleaning for hours worked during the same week or month[,]" *id.*; and that "all three entities shared or commingled office staff, facilities, and vendors[,]" *id.* ¶ 34.

*The Parties' Pre-Suit Interactions.*   Though Plaintiff has raised these concerns before filing suit, Defendants refused to address them. *Id.* ¶ 36. "On January 25, 2022, the Plaintiff served the Defendants with a request for an audit covering the period of June 2016 through present. . . . Defendants retained an attorney and refused to produce a complete set of records." *Id.* ¶ 21.

*Plaintiffs' Claims.*   Plaintiff's Amended Complaint includes four counts: (1) alter-ego liability for QC Companies and Quality Cleaning, alleging that with Quality Coatings they "should be treated as a single employer under ERISA Section 515," 29 U.S.C. § 1145; (2) a right to audit against all Defendants under ERISA, 29 U.S.C. § 1145; (3) individual liability of Alisa Maciej under the CBAs; and (4) "any and all unpaid fringe benefit contributions found to be due and owing for the Audit Period[,]" along with interest, liquidated damages, attorneys' fees, and other relief under ERISA, 29 U.S.C. §§ 1145, 1132. Am. Compl. ¶¶ 58–63. Though the introductory paragraph of the Amended Complaint says that this case is brought under ERISA "and the Labor Management Relations Act ("LMRA")[,]" Am. Compl. at 1, no count references the LMRA, *see* Am. Compl. at ¶¶ 37–63.

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Hartman v. Bowles*, 39 F.4th 544, 545 (8th Cir. 2022). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A

Plaintiff asserts its right-to-audit claim under ERISA, specifically 29 U.S.C. § 1145. This section provides: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Section 1145, together with ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), "create a cause of action by which appropriate plaintiffs may enforce an employer's obligations to make contributions to employee benefit plans." *Romney v. Lin*, 94 F.3d 74, 82 (2d Cir. 1996); *see Trustees of the So Cal IBEW-NECA Pension Plan v. Fadul*, No. SACV 18-00605NS (DFMx), 2022 WL 2288022, at *5 (C.D. Cal. Mar. 9, 2022).

6

"The alter ego doctrine may apply when a pension fund tries to collect unpaid contributions." *Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 520 (8th Cir. 2020) (citing *Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997)). The Eighth Circuit applies "corporate law principles to determine employer liability under ERISA, where such principles comport with the language and purposes of the statute." *Superior Gen. Contractors, Inc.*, 104 F.3d at 1055. Under "the alter ego doctrine as developed under corporate law[,] . . . the legal fiction of the separate corporate entity may be rejected in the case of a corporation that (1) is controlled by another to the extent it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, justify wrong, or perpetuate a fraud." *Id.*; *see also Johnson*, 950 F.3d at 520. No Eighth Circuit case has been cited or identified listing particular factors that must be considered to analyze whether, under the alter-ego test's first element, one organization is controlled by another. Regardless, it seems appropriate to consider any number of common-sense factors, including whether the entities share a business purpose, whether they share management and control, whether funds have been commingled, whether the entities share employees, whether the entities transact with each other at arm's length, and so on. *See Superior Gen. Contractors, Inc.*, 104 F.3d at 1055–56; *Shopman's Loc. Union 502 Pension Fund v. Samuel Grossi & Sons, Inc.*, --- F. Supp. 3d ---, No. 20-cv-5776, 2022 WL 63038, at *5–7 (E.D. Pa. Jan. 6, 2022); *Trs. of Local 7 Tile Indus. Welfare Fund v. Sesso Tile & Stone Contractors, Inc.*, No. 15 CV 6124 (SJ) (RML), 2016 WL 4597481, at *2–3 (E.D.N.Y. Aug. 18, 2016); *Operating Eng'rs Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc.*, No. 01-0087-

CV-W-SOW, 2002 WL 1492103, at *5–7 (W.D. Mo. Mar. 11, 2002). Regarding the second element, "[i]n the context of a collective bargaining agreement, a 'critical part' of the inquiry is whether an employer displays anti-union sentiment by using the alter ego to avoid its obligations." *Johnson*, 950 F.3d at 520 (citation omitted). Plaintiff bears the burden of proving that Defendants were alter egos of each other. *Marshall v. Anderson Excavating & Wrecking Co.*, 901 F.3d 936, 935 (8th Cir. 2018).

Here, Plaintiff alleges facts plausibly showing that QC Companies and Quality Cleaning are alter egos of Quality Coatings. Plaintiff alleges, for example, that Quality Coatings and Quality Cleaning solicit and obtain work through the QC Companies website and that the three entities do not differentiate their identities or operations through the website (or through use of separate websites). Am. Compl. ¶¶ 24, 25. Plaintiff alleges further that QC Companies' website has displayed photographs showing CBA-covered work without distinguishing which entity performed the work. *Id.* ¶ 25. Plaintiffs allege that Local 633 members who have worked for Defendants "have received nearly identical checks regardless of which entity they are . . . working for during the course of a pay period," *id.* ¶ 27, and that some of these checks have been issued by QC Companies, *id.* ¶ 29. Plaintiffs allege that "at least one Local 633 member" received checks indicating that, at various times, each Defendant was a payor. *Id.* ¶ 30. And Plaintiffs allege that, in addition to common ownership and management, Defendants "shared or commingled office staff, facilities, and vendors." *Id.* ¶ 34.

Plaintiff also alleges facts plausibly showing that Defendants engaged in these activities to perpetuate a fraud and displayed anti-union sentiment. Two sets of allegations

seem to support this second element of the corporate law alter-ego doctrine. First, Plaintiff alleges essentially that Defendants' purpose in commingling their operations was to "defraud[] their customers into believing they have hired a union company but then avoid[] the obligations set forth in the CBAs." *Id*. ¶ 44. In other words, Plaintiff alleges that Defendants' activities deceived customers into believing that they were hiring Quality Coatings when, in fact, the customers may have been hiring QC Companies or Quality Cleaning, and that this enabled Quality Coatings to evade its obligations under the CBAs. Second, Plaintiff alleges that Local 633 representatives have met with Quality Coatings several times to address these issues, that Defendants' owners have refused to cooperate, and that this lack of responsiveness shows anti-union sentiment. *Id*. ¶ 36. Though these allegations are less specific than Plaintiff's allegations concerning Defendants' shared control and lack of independence, they are enough to plausibly show anti-union sentiment.

Defendants argue that Plaintiff's alter-ego theory is implausible because "a non-union company cannot have the intent to evade a collective bargaining agreement that it never entered into by forming and operating a union company that did enter into a collective bargaining agreement." Defs.' Mem. in Supp. [ECF No. 27] at 9. Defendants describe Plaintiff's theory as one alleging a "reverse alter ego" theory and argue that courts have rejected this theory. This is not persuasive. The argument seems to depend on some cases applying the alter-ego doctrine developed under the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, but the Eighth Circuit has made clear that this standard does not apply in cases (like this one) arising under ERISA, 29 U.S.C. § 1145. *Superior Gen. Contractors, Inc.*, 104 F.3d at 1054–55. If it applied here, it is not clear the reverse-alter-

9

ego doctrine Defendants cite would preclude Plaintiff's claims. In one case Defendants cite, for example, the Ninth Circuit rejected the reverse-alter-ego doctrine because the case involved a non-union employer allegedly creating a union company and, in that court's view, "the alter ego doctrine prevents union employers from avoiding collective bargaining obligations, [and] does not apply in the 'reverse' where a non-union employer creates a union company because the non-union employer has no collective bargaining obligations to avoid." *So. Ca. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co., Inc.*, 558 F.3d 1028, 1033 (9th Cir. 2009). However, the court suggested the result might have been different had the plaintiff identified evidence indicating that the more recently formed union company "was using" the older non-union company "to avoid [its] union obligations." *Id.*; *see also Mass. Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc.*, 343 F.3d 18, 22 (1st Cir. 2003) ("Of course, the fact that the *alter ego* doctrine has not been applied without some change in corporate structure or operations after the event giving rise to the union's right does not mean that it never should be so applied."). That is what we have here: Plaintiff alleges facts plausibly showing that the more recently formed union company, Quality Coating, was using the older non-union entities, QC Companies and Quality Cleaning, to avoid its union obligations. In other words, even cases rejecting the reverse-alter-ego doctrine leave room for Plaintiff's theory here.

B

Defendants argue that QC Companies should be dismissed because it is an assumed name and therefore lacks capacity to be sued under Minnesota law. Defs.' Mem. in Supp.

10

at 4. This is not persuasive. Evidently by design, QC Companies has not appeared to defend this case. Appearance notices and Defendants' motions omit reference to QC Companies. *See* ECF Nos. 9, 10, 12, and 25. And counsel evidently has refused to accept service for QC Companies. *See* Pl.'s Mem. in Opp'n [ECF No. 35] at 11. As a practical matter, it is difficult to understand how a named party that has not appeared might seek its dismissal.

This consideration aside, the law pretty clearly allows QC Companies to be sued here, notwithstanding its unincorporated status. Federal Rule of Civil Procedure 17 provides, as relevant here:

> **(b) Capacity to Sue or Be Sued.** Capacity to sue or be sued is determined as follows:
>
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>
> (2) for a corporation, by the law under which it was organized;
>
> (3) for all other parties, by the law of the state where the court is located, except that:
>
>> (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws[.]

Fed. R. Civ. P. 17(b).

Plaintiff seeks to enforce substantive rights under ERISA—specifically Defendants' alleged obligations to make contributions in accordance with the terms of the CBAs. 29 U.S.C. § 1145. Section 1145 applies specifically to an "employer." ERISA defines

"employer" to mean "any *person* acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5) (emphasis added). And ERISA defines "person" to include "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, *unincorporated organization*, association, or employee organization." 29 U.S.C. § 1002(9). Thus, between Rule 17 and ERISA, it seems clear that QC Companies has the capacity to be sued in this case, notwithstanding Minnesota law.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendants' Motion to Dismiss [ECF No. 25] is **DENIED**.

Dated: August 15, 2022

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court