UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Cement Masons, Plasterers, and Shophands Service Corporation, | Case No. 22-CV-00712 (JMB/DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Quality Coatings, LLC, Quality Cleaning, Inc., QC Companies, and Alisa Maciej, Individually, | |
| Defendants. | |

---

Amanda R. Cefalu, Pamela Hodges Nissen, Reinhart Boerner Van Deuren S.C., Minneapolis, MN, for Plaintiff Cement Masons, Plasterers, and Shophands Service Corporation.

Colleen Cosgrove McGarry, Katherine Marie Geneser, Fox Rothschild LLP, Minneapolis, MN for Defendants Quality Coatings, LLC, Quality Cleaning, Inc., QC Companies, and Alisa Maciej, Individually.

---

Before the Court is Defendants Quality Coatings, LLC's (Coatings), Quality Cleaning, Inc.'s (Cleaning), QC Companies' (QC), and Alisa Maciej's (together, Defendants) motion to bifurcate trial into two phases. (Doc. No. 112.) For the reasons explained below, the Court denies Defendants' motion.

## BACKGROUND

The Court set forth a complete recitation of undisputed background facts in its Order on the parties' cross-motions for summary judgment, which it incorporates here. (*See* Doc. No. 107.) The Court includes an abbreviated version of those undisputed facts below for purposes of resolving Defendants' motion to bifurcate.

1

Plaintiff Cement Masons, Plasterers, and Shophands Service Corporation (Service Corporation) is a non-profit entity that acts as the receiving and collection agency for member employee benefit plans, including fringe-benefit plans, for which it serves as a fiduciary and collection agent. (*Id.* at 2.) Service Corporation's members have assigned to Service Corporation their rights and powers to collect and receive employer contributions, collect and enforce the remedies those members may have to address employer delinquencies, and to initiate legal actions. (*Id.*)

Cleaning is a family-owned business that started as a commercial cleaning company in 1990. (*Id.* at 3, 14.) At some point, it began performing floor coating work. (*Id.* at 3.) Alisa Maciej is married to one of the owners of Cleaning and has been very active in its management. (*Id.*) In 2004, Cleaning began operating under the name "QC Companies" in an effort to grow its floor coating business. (*Id.*)

Starting in 2008, QC began performing floor coating work on projects that required union work, including a project at Target Field in 2008; a project in Duluth in 2011; and a project in Minneapolis in 2013. (*Id.* at 3–5.) QC found workarounds to secure and work on these projects without signing a collective bargaining agreement (CBA). (*Id.* at 4–5.) During this time, it did not wish to sign a CBA because it had been "nonunion . . . for many years" in order "to be competitive" when bidding on non-union projects, and because it "had too much other work." (*Id.* at 4.)

However, sometime around or after the start of the 2013 Minneapolis project, QC began considering and consulted with legal counsel about entering into a CBA to capture more union work. (*Id.* at 5–6.) In June 2013, Alisa Maciej and her husband founded

2

Coatings, which went on to sign a CBA in June 2014.  (*Id.* at 6.)  The 2014 CBA, and subsequent iterations of it, required Coatings to contribute to employee fringe benefit funds.  (Doc. No. 87 ¶ 6; Doc. No. 87-2 at 9–10.)  Service Corporation contends that Alisa Maciej personally guaranteed Coatings' liabilities under the CBAs.  (Doc. No. 87-1 at 2.)  After entering into a CBA, Coatings set up a "separate office" and asked its employees—some of whom were shared with QC—to join the union.  (Doc. No. 107 at 7.)  From the time it entered into the 2014 CBA until it ceased operations in 2022, Coatings bid on and performed union floor coating work.  (*Id.* at 7–8.)

In its four-count Amended Complaint (Doc. No. 20), Service Corporation brings claims for: (1) damages related to all unpaid fringe benefit contributions under ERISA, 29 U.S.C. §§ 1132, 1145; (2) alter-ego liability against QC and Cleaning for unpaid fringe benefit contributions to Service Corporation under Coatings' CBA; (3) unpaid fringe benefits to Service Corporation against Alisa Maciej, individually, under Coatings' CBA; and (4) a right-to-audit claim against all Defendants under ERISA, 29 U.S.C. § 1145.  On December 6, 2023, the Court denied the parties' cross-motions for summary judgment.  (*See* Doc. No. 107.)

## DISCUSSION

Defendants now move to bifurcate the trial into, as follows: Phase 1, to determine whether QC and Cleaning are liable for unpaid contributions to Service Corporation under an alter-ego theory; and, Phase 2, to determine all remaining issues, including the liability of Coatings and Alisa Maciej and damages.  (*See* Doc. Nos. 112, 114.)

3

At the outset, the Court notes that bifurcation is to be "the exception not the rule, and should not be routinely ordered." *Fair Isaac Corp. v. Fed. Ins. Co.*, 650 F. Supp. 3d 731, 735 (D. Minn. 2023) (citations omitted). In fact, bifurcation has been described as "an extreme remedy," because "piecemeal litigation 'is not to be the usual course.'" *Collins v. Depositors Ins. Co.*, No. 12-CV-3133 (PAM/LIB), 2014 WL 12616731, at *1 (D. Minn. Aug. 21, 2014) (citing 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2388 (3d ed. 2014)). Nevertheless, the Court may separate "one or more separate issues [or] claims" for trial, but only for purposes of "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Here, Defendants contend that bifurcation will promote the last of these listed purposes: judicial economy. Defendants carry a "heavy burden" to show that bifurcation will actually meet that purpose. *Collins*, 2014 WL 12616731, at *1. For the reasons discussed below, the Court concludes that Defendants have not carried their burden.

**I.      Judicial Economy**

Defendants argue that the interests of judicial economy would be served by bifurcation because, in their view, the entire case rises and falls on the outcome of the alter-ego issue, which would be the focus of their proposed Phase I. Defendants assert that, if there is no finding of alter-ego liability against Cleaning and QC, "then the Court will not even need to conduct an analysis of Plaintiff's remaining claims (e.g., determining personal liability and the right to audit) or engage in a damages analysis." (Doc. No. 114 at 9.) Defendants further contend that there will be minimal witness or documentary evidence overlap between the alter-ego issue and other issues. (*See id.* at 8–10.)

Perhaps the most straightforward of Service Corporation's several arguments opposing bifurcation is that its claims against Coatings and Alisa Maciej "will survive regardless of the outcome of the alter ego claim." (Doc. No. 121 at 20.) The Court agrees; Service Corporation will still have unpaid fringe-benefit contribution claims against Coatings and Alisa Maciej even if it is unable to prove that Cleaning and QC are liable for additional unpaid contributions. As a result, bifurcation would unavoidably result in two trials, which engenders no added judicial efficiency.[1]

Further, bifurcation promotes convenience and judicial economy only when "the separable claims are 'substantially different.'" *In re RFC & ResCap Liquidating Tr. Litig.*, Nos. 13-CV-3451 (SRN/HB), 16-CV-3024 (SRN/HB), 2019 WL 2337323, at *3 (D. Minn. June 3, 2019). It follows that, where issues are not "substantially different" and are instead "intertwined," bifurcation does not promote judicial efficiency. *E.g.*, *id.* (collecting cases, and denying request to bifurcate in part because several witnesses would be required to testify twice and on same topics). Service Corporation contends, and the Court agrees, that the issues in proposed Phases I and II overlap, such as Coatings' history of reporting to Service Corporation, the records concerning the right-to-audit claim, the nature of the contracts entered into by Cleaning, the nature of the work performed by Cleaning's employees, and Defendants' payroll and timekeeping practices. Given this overlap, the

---

[1] At the hearing on this motion, Defendants insinuated that their proposed Phase II would not need to occur regardless of the outcome of Phase I because the parties were engaged in settlement discussions that would eliminate the parties' dispute over damages. However, even if the parties reached an agreement on a damages figure, it would not eliminate the need for trial on the issues of Alisa Maciej's and Coatings' liability under the CBA.

5

proposed trial phases do not involve sufficiently separate issues to justify bifurcation. *ADT Sec. Servs., Inc. v. Swenson*, No. 07-CV-2983 (JRT/AJB), 2011 WL 4396918, at *5 (D. Minn. Sept. 21, 2011) (denying motion to bifurcate trial because claims overlapped and bifurcation would result in presentation of same evidence twice); *see also Moore v. Navillus Tile, Inc.*, Nos. 14-CV-8326 (CM), 15-CV-8441 (CM), 2017 WL 11567280, at *4–6 (S.D.N.Y. Jan. 3, 2017) (denying motion to bifurcate alter-ego issue "[g]iven the apparent commonality of evidence and logical relationship among Plaintiffs' claims").

For the above reasons, Defendants have not carried their "heavy burden" to show that the alter-ego issue is sufficiently separate and distinct from the other issues in the case, and, thus, that bifurcation of trial is appropriate.

**II.    Prejudice**

To prevail on their motion, Defendants must also demonstrate that bifurcation would "avoid prejudice." Fed. R. Civ. P. 42(b). A moving party's "[f]ailure to show prejudice alone warrants denial of a motion for separate trials." *Collins*, 2014 WL 12616731, at *2; *see also Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (finding no abuse of discretion where district court denied motion to bifurcate because requesting party failed to show prejudice).

Defendants assert that they will be prejudiced by a single trial because they will be "forced to spend unnecessary time and resources through Plaintiff's requested two-week trial" and be "compelled to present their defenses to claims that can only survive if Plaintiff proves alter-ego liability." (Doc. No. 114 at 11.) In other words, Defendants' prejudice argument is merely derivative of their assertion that all remaining issues fall away if

6

Plaintiff cannot establish alter-ego liability. As noted above, the Court does not agree. Defendants have not shown that "the potential benefits of bifurcation . . . outweigh the potential detriment." *In re RFC*, 2019 WL 2337323, at *2. As a result, the Court is not convinced that bifurcation meets the purposes described in Rule 42(b).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

    **1.**    Defendants' Motion to Bifurcate (Doc. No. 112) is **DENIED**.

Dated: May 9, 2024                                                    /s/ Jeffrey M. Bryan
                                                                                     Judge Jeffrey M. Bryan
                                                                                     United States District Court